# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Marcus Anthony Berry,<br><br>Defendant. | Case No. 20-CV-1360 (SRN/BRT)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Friedrich A. P. Siekert, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Karen E. Mohrlant, F. Clayton Tyler, P.A., 331 Second Avenue South, Suite 230, Minneapolis, MN 55401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Defendant Marcus Berry's Objection [Doc. No. 43] to the July 22, 2021 Report and Recommendation [Doc. No. 27] ("R&R"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **OVERRULES** the Objection, **ADOPTS** the R&R, and **GRANTS** the Petition to Determine Present Mental Health Condition of an Imprisoned Person Due for Release Under 18 U.S.C. § 4246 (the "Petition") [Doc. No. 1].

1

I.  **BACKGROUND**

The factual and procedural background of this matter is well documented in the R&R and is incorporated herein by reference.[1] The Court therefore recites only the relevant factual background and procedural developments.

In January of 2012, sixteen-year-old Defendant Michael Berry was arrested for the underlying offense. (R&R at 3.) While at the bus stop, Mr. Berry "touched and kicked" a girl on the buttocks. (*Id.*) When her brother and mother confronted him, he pulled out a gun and began shooting at the brother, with several shots hitting his leg. (*Id.*) The mother tried to stop him, but he shot her in the leg as well, permanently disabling her. (*Id.*)

A period of four years intervened between this incident and his sentencing. (*Id.* at 3.) Throughout this time, Mr. Berry was shuffled between a jail in the District of Columbia and Saint Elizabeth's Hospital, where he was evaluated multiple times to determine whether he was competent to stand trial, with different evaluations returning different results. (*Id.*) Also during this time, he had several verbal, physical, and sexual altercations with his peers and other detainees. (*Id.* at 3–5.) Ultimately, in 2015, he was found competent to stand trial, entered a guilty plea, and was sentenced to 90 months

---

[1] Mr. Berry does not object to the R&R's factual and procedural background. Instead, Mr. Berry spends considerable time explaining his efforts to be placed in the District of Columbia. (Obj. 1–2.) The Court notes that "the Attorney General must continue to make all reasonable efforts to place [Mr. Berry] in a suitable state facility, *see* 18 U.S.C. § 4246(d), and to prepare annual reports concerning [his] mental condition and the need for his continued hospitalization." *United States v. Steil*, 916 F.2d 485, 488 (8th Cir. 1990). The Court hopes that Mr. Berry may be placed in an appropriate state institution soon, but also appreciates that such a placement depends upon finding a state institution that is willing to accept Mr. Berry. Even so, the Court is confident that the Government will continue its efforts in this regard.

incarceration. (*Id.* at 5.) While incarcerated, he spent most of his time in seclusion, often at his own request. (*Id.* at 5–6.)

In October 2018, Mr. Berry began supervised release, living with his mother in the D.C. area. (*Id.* at 6.) After seven months, he began violating his terms of release, including "missing urine testing, missing meetings with his probation officer, and failing to attend mental health treatment." (*Id.*) He was re-arrested for these violations near the end of 2019 and placed at a federal correctional institute in Pennsylvania. (*Id.*) There is no evidence that he engaged in violence during this time, but it does appear that he was experiencing symptoms of psychosis. (*Id.*)

After returning to prison, Mr. Berry started exhibiting more signs of mental illness. (*Id.*) He became paranoid and anxious, struggling with delusional thoughts and having conversations with himself. (*Id.* at 6–7.) He expressed his fixation on a woman named Rachel, which has been an obsession of his for many years. (*Id.*) Specifically, he made several threats to impregnate her and kill any man who would get near her. (*Id.* at 7.) On April 17, 2020, he was transferred to the Federal Medical Center ("FMC") in Rochester, Minnesota, to determine his mental health status pursuant to 18 U.S.C. § 4246. (*Id.*)

At FMC Rochester, he was again housed in seclusion and his mental illness worsened. (*See id.*) His fixation on Rachel deepened. (*Id.*) He also began yelling at nurses, shrieking frequently, covering his windows with towels, and hearing voices. (*Id.*) After evaluation, Mr. Berry was diagnosed with schizophrenia. (*Id.* at 8.) He continues to struggle with delusions, hallucinations, and disorganized conduct and thoughts, among other symptoms. (*Id.*)

In April and May of 2020, the Risk Assessment Review panel evaluated Mr. Berry. (*See Generally* Risk Assessment Review Report [Doc. No. 2].)  The panel discussed Mr. Berry with his primary caregiver at FMC Rochester, interviewed Mr. Berry and his mother, and reviewed many documents.  (*Id.* at 2–3, 36; *see also* Hr'g Tr. [Doc. No. 22] 10:22–11:13.)  The five members unanimously concluded that "Mr. Berry's release would create a substantial risk of bodily injury to another person or serious damage to the property of others due to mental illness and recommend[ed] he be civilly committed."  (*Id.* at 35.)

The Government then filed the Petition under 18 U.S.C. § 4246.  The Government sought a hearing to determine the present mental condition of Mr. Berry, arguing that he suffers from a mental disease, and thus seeking an order committing him to the custody of the Attorney General for continued hospitalization.  (Pet. ¶ 6.)  The matter was referred to the magistrate judge.  (*See* Doc. Nos. 5, 12, 14, 19, 27.)

The magistrate judge concluded that Mr. Berry suffers from a mental disease that poses a substantial risk of bodily injury to another.  (R&R at 8.)  She appropriately noted that the parties do not meaningfully dispute two of the relevant factors, namely, that Mr. Berry suffers from a mental disease (i.e., schizophrenia) and that no suitable state placement exists.  (*Id.* at 10.)  Therefore, the magistrate judge considered only (1) whether the Government had proven by clear and convincing evidence that Mr. Berry's release poses a substantial risk of bodily injury to another person, (*id.* at 11), and (2) whether that risk of danger is caused by his mental disease, (*id.* at 16.)  The magistrate judge found in the affirmative on both issues and thus recommended that the Court grant the Government's Petition to commit Mr. Berry under 18 U.S.C. § 4246.  (*Id.* at 18.)

Mr. Berry objects to the R&R. Specifically, Mr. Berry objects to the magistrate judge's findings that he is a substantial risk of bodily injury *to another*. (*Id.* at 4.) Alternatively, even if such a risk exists, he contends that the Government has failed to show by clear and convincing evidence that his mental illness is *causing* that risk.[2] (*Id.* at 4–5.)

## II.  DISCUSSION

### A.  Legal Standard

The district court reviews *de novo* those portions of the R&R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* D. Minn. L.R. 72.2(b). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). And "[a] party cannot, in his objections to an R & R, raise arguments that were not clearly presented to the magistrate judge." *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947–48 (D. Minn. 2006) (citing *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004)).

### B.  Analysis

Under 18 U.S.C. § 4246, "the district court is trusted with 'an awesome responsibility to the public to ensure that a clinical patient's release is safe.' " *United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997). Section 4246 permits the " 'indefinite

---

[2]  Mr. Berry does not dispute that there is no other suitable state placement available. (Obj. at 5.)

hospitalization' " of a federal prisoner who is set for release, but who, " 'as the result of a mental illness, poses a significant danger to the general public.' " *United States v. Dalasta*, 3 F.4th 1121, 1125 (8th Cir. 2021) (quoting *United States v. Thomas*, 949 F.3d 1120, 1123 (8th Cir. 2020). To involuntarily commit someone, the government must prove the following by clear and convincing evidence: "(1) a mental disease or defect; (2) dangerousness if released; and (3) the absence of suitable state placement." *United States v. Williams*, 299 F.3d 673, 676 (8th Cir. 2002) (internal quotation marks omitted). The government must also prove that "a direct causal nexus" exists "between the mental disease or defect and dangerousness." *Id.*

Here, Mr. Berry objects to the magistrate's finding of dangerousness. (Obj. at 4–5.) If the Court disagrees, Mr. Berry objects that such dangerousness is *caused* by his mental illness. (*Id.*) Each objection is reviewed *de novo* below.

### 1. Dangerousness

Mr. Berry objects to the finding of dangerousness by arguing that his last act of aggression occurred in May of 2016 and that, even though his mental illness has worsened since that time, it has not been accompanied by any actual or attempted acts of aggression toward others. (Obj. at 4–5.)

The Eighth Circuit has explained that "overt acts of violence are not required for a dangerousness finding." *Williams*, 299 F.3d at 677. In fact, courts acknowledge that the lack of evidence of a federal prisoner's recent physical violence could be explained by his confinement. *See id.* ("Williams' more recent behavior may merely reflect an adjustment to the strictly controlled correctional environment."); *United States v. Murdoch*, 98 F.3d

472, 476 (9th Cir. 1996) (concluding that the controlled environment of confinement likely resulted in the absence of violence while incarcerated); *see also United States v. Evanoff*, 10 F.3d 559, 563 (8th Cir. 1993) (affirming dangerousness finding and explaining that "the recency or remoteness of any particular activity simply affects the weight the court will give to that particular evidence").

Here, Mr. Berry exhibited dangerousness prior to his confinement. For example, when committing his initial offense, he engaged in unwanted touching and kicking of a young female, and then, when confronted by her brother and mother, inexplicably shot them multiple times with a gun. (R&R at 3.) Similarly, in 2014 and 2015, Mr. Berry engaged in a series of "verbally, physically, and sexually inappropriate behaviors" while detained at Saint Elizabeth's Hospital, including at least two unprovoked physical assaults on other patients. (*Id.* at 4–5.) After those physical altercations, Mr. Berry spent most of his time in secluded confinement, until his release in October of 2018. (*Id.* at 6.) Although Mr. Berry did not engage in physical violence during his release, he did violate his terms of release and was thus rearrested in December 2019. (*Id.*) At that time, his mental illness had worsened. (*Id.* at 6–7.) Like in *Williams*, *Steil*, and *Murdoch*, Mr. Berry's lack of overt acts of physical violence may be attributable to his seclusion and the terms of his supervised release—not his lack of dangerousness.

Moreover, district courts can rely on the prisoner's record of violent and aggressive behavior, along with evidence of mental instability. *S.A.*, 129 F.3d at 1000. In *S.A.*, the Eighth Circuit affirmed the district court's finding of dangerousness. *Id.* at 1001. The court based this finding on the prisoner's repeated assaults to other detainees, and

7

experiences with visual and auditory hallucinations, "some of which urge[d] him to act violently," along with his history of drug and alcohol abuse. *Id.* at 1000. The court also found significant his letters that expressed violent tendencies and threatened to commit future crimes, and his reluctance to continue to take medication in the future. *Id.* at 1000–01.

Mr. Barry has exhibited similar conduct here. In addition to the physical acts outlined above, Mr. Berry has a history of using marijuana and K2, synthetic marijuana, since the age of 12. (*See* R&R at 15.) He also routinely has conversations with himself and is paranoid that other inmates will harm him. (*Id.* at 6–7.) Also, his time on supervised release confirmed his unwillingness to treat his mental condition on his own. (*Id.* at 6 ("He began to violate supervision in May of 2019, missing urine testing, missing meetings with his probation officer, and failing to attend mental health treatment.").)

Most importantly, he has expressed his desire to impregnate a woman named Rachel and to hurt anyone else who attempts to do so—thoughts which continue to preoccupy his mind. (*Id.* at 7; Bureau of Prisons Disruptive Behavior Intervention [Doc. No. 17–17] at 1 (explaining that, as recent as October 2020, he was placed in seclusion due to threats about killing anyone who would impregnate Rachel).) His obsession with Rachel has spanned multiple years and his mother shared that he once asked his uncle to kill Rachel and then threatened his uncle when he refused. (Risk Assessment Review Report at 35.)

What is more, Mr. Berry is unaware of his mental illness. (R&R at 14; Obj. at 4.) In this Objection, Mr. Berry notes that, despite the evidence showing that he has a mental illness, he disagrees. (Obj. at 4.) This blanket denial is evidence of dangerousness. *See*

8

*United States v. Kikuyama*, 394 Fed. Appx. 334, 335 (8th Cir. 2010) ("[T]he district court's finding was supported in part by . . . evidence . . . that he . . . lacked insight into his condition.").

Taken together, the Court finds that the Government has proven dangerousness by clear and convincing evidence.

### 2. Causal Nexus

Mr. Berry alternatively contends that the Government has failed to show that his mental illness is causing the dangerousness. (*See* Obj. at 4–5.) Again, he notes that his mental illness has gotten progressively worse over the years, while there have been no acts of physical aggression since May of 2016. (*Id.* at 4.)

As explained above, the number of overt physical acts of violence is not dispositive on dangerousness nor a causal nexus. *See Williams*, 299 F.3d at 677–78. Instead, the government can meet its burden under Section 4246 when the risk assessment panel and expert testimony conclude that the prisoner's mental illness creates a risk to others. *See id.* at 678 ("The testimony of the government's experts, consistent with the Risk Assessment Panel report, was sufficient to satisfy the plain language of § 4246.").

Here, the Risk Assessment Review panel unanimously opined that "Mr. Berry's release would create a substantial risk of bodily injury to another person or serious damage to the property of others due to mental disease." (Risk Assessment Review Report at 35.) Likewise, the Government's expert, Dr. Klein, stated in various ways that Mr. Berry's worsening schizophrenia "creates a risk of him being aggressive or violent or dangerous to other persons should he [be] release[d] to the community with these symptoms still

9

present." (Hr'g Tr. [Doc. No. 22] 21:20–22.) Mr. Berry has failed to put forth any evidence to the contrary. Accordingly, as in *Williams*, this is enough to show a "causal nexus" between Mr. Berry's mental illness and dangerousness. *See, e.g.*, *Williams*, 299 F.3d at 677–78 (rejecting prisoner's argument that there was no causal nexus); *Murdoch*, 98 F.3d at 476 (explaining that decreased dangerous acts were due to confinement, treatment, and reduced stress, and not a lack of dangerousness).

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objection to the Report and Recommendation [Doc. No. 43] is **OVERRULED**;

2. The Report and Recommendation [Doc. No. 27] is **ADOPTED**; and

3. The Petition to Determine Present Mental Condition of an Imprisoned Person Due for Release Under 18 U.S.C. § 4246 is **GRANTED**. Mr. Berry is committed to the custody of the Attorney General, pursuant to 18 U.S.C. § 4246.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: April 12, 2022                s/ Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge